Shayna Fernandez Watts (027342)
FERNANDEZ WATTS LAW PLLC
1801 E. Camelback Rd. Ste. 102 #1057
Phoenix, Arizona 85016
Phone: (602) 760-5100
Fax: (602) 760-5130
Email: Shayna@FernandezWattsLaw.com
*Attorney for Plaintiff Sophia Rocha*

# UNITED STATES DISTRICT COURT

# DISTRICT OF ARIZONA

| | |
|---|---|
| Sophia Rocha,<br><br>    Plaintiff,<br><br>v.<br><br>Lorinda Cordova, an individual; LA Concepts, LLC, dba "UPS Store 4140," a domestic limited liability company; and The American Messenger Co., LLC, dba "UPS Store 7001," a domestic limited liability company;<br><br>    Defendants. | No.<br><br>**COMPLAINT**<br><br>(1) Violation of FLSA for Failure to Pay Overtime (29 U.S.C. 207(a))<br>(2) Bad Faith Failure to Pay Wages Under §A.R.S. 23-355<br>(3) Negligent Misrepresentation<br>(4) Unjust Enrichment<br>(5) Breach of the Implied Duty of Good Faith and Fair Dealing<br><br>(Jury Trial Demanded) |

Plaintiff Sophia Rocha ("Plaintiff") for her Complaint against Defendants Lorinda Cordova, LA Concepts, LLC, dba "UPS Store 4140," The American Messenger Co., LLC, dba "UPS Store 7001," (collectively, "Defendants") alleges as follows:

## PARTIES, JURISDICTION AND VENUE

1. Plaintiff Sophia Rocha is an individual and a resident of Maricopa County, Arizona.

2. Defendant Lorinda Cordova, a resident of Maricopa County, Arizona, is an individual and LLC member and owner of both LA Concepts, LLC, dba "UPS Store 4140," (hereafter "Store 4140") and The American Messenger Co., LLC, dba "UPS Store 7001" (hereafter "Store 7001") (collectively, "LLC Defendants").

3. Defendant LA Concepts, LLC, dba "UPS Store 4140" is a domestic limited liability company doing business in Arizona.

4. Defendant The American Messenger Co., LLC, dba "UPS Store 7001" is a domestic limited liability company doing business in Arizona.

5. This is an employment action arising under the Fair Labor Standards Act, 29 U.S.C. § 201-219, ("FLSA").

6. Plaintiff was continuously employed by Defendants from approximately July 2020 to May 21, 2022, and at all times relevant to this Complaint.

7. Defendants caused events and/or omissions in Arizona that gave rise to Plaintiff's damages and are, for that and other reasons, subject to the personal jurisdiction in this Court.

8. This Court has subject matter jurisdiction pursuant to 28 U.S.C. § 1331 and 29 U.S.C. § 201, *et seq.* because this action arises under the Constitution and laws of the United States.

9. This Court has supplemental jurisdiction over Plaintiff's claims arising under Arizona law pursuant to 28 U.S.C. § 1367 because such claims are so related to Plaintiff's claims within this Court's original jurisdiction that they form part of the same case or controversy under Article III of the United States Constitution.

10. At all times relevant hereto, Defendants are and have been employers as defined under the FLSA (29 U.S.C. §203(d)) and are accordingly subject to the provisions of said act.

11. At all times relevant hereto, Plaintiff is and has been an employee under the FLSA (29 U.S.C. §203(e)).

12. Venue is proper in this district pursuant to 28 U.S.C. § 1391(b) and (c) because acts giving rise to the claims herein occurred within the District of Arizona, Defendant regularly conducts business in, has its principal place of business in, has engaged

in the conduct alleged in the Complaint – and, thus, is subject to personal jurisdiction in – this judicial district.

**GENERAL ALLEGATIONS**

13. In or about July of 2020, Defendant Lorinda Cordova hired Plaintiff to work at UPS Stores 4140 and 7001.

14. Plaintiff was hired as a UPS hourly employee at the rate of $17.00 per hour.

15. Her duties included working the front desk and assisting customers with their shipping needs.

16. In her initial role at UPS, Plaintiff worked less than 40 hours per week.

17. In or about August of 2020, Defendant Cordova changed Plaintiff's employee status from hourly to salary and gave her the title of "Multi-Site Manager."

18. As "Multi-Site Manager," Plaintiff earned $1,000.00 from UPS Store 4140 on a biweekly basis and earned $640 per month from UPS Store 7001 paid in bi-monthly installments.

19. The lower rate of pay from UPS Store 7001 was intentional to reflect the anticipated fewer working hours allocated to Store 7001, as compared to Store 4140.

20. Following Plaintiff's title change, Defendant Cordova significantly increased Plaintiff's work schedule, scheduling and directing her to work over 40 hours per week for both stores.

21. Defendant Cordova further instructed Plaintiff not to clock in or out for hours worked since she was a salaried employee.

22. Thereafter, Plaintiff's schedule often exceeded 40 hours per week for both stores.

23. Plaintiff worked in excess of 40 hours per week on the following weeks, at a minimum:
- Week of September 13, 2020
- Week of September 27, 2020

FERNANDEZ WATTS LAW, PLLC
1801 E. Camelback Rd. Ste. 102 #1057
Phoenix, Arizona 85016

- Week of October 4, 2020
- Week of October 11, 2020
- Week of October 18, 2020
- Week of October 25, 2020
- Week of November 1, 2020
- Week of November 8, 2020
- Week of November 15, 2020
- Week of November 22, 2020
- Week of November 29, 2020
- Week of December 6, 2020
- Week of December 13, 2020
- Week of December 20, 2020
- Week of December 27, 2020
- Week of January 3, 2021
- Week of January 10, 2021
- Week of January 17, 2021
- Week of January 24, 2021
- Week of January 31, 2021
- Week of February 7, 2021
- Week of February 14, 2021
- Week of February 21, 2021
- Week of February 28, 2021
- Week of March 7, 2021
- Week of March 21, 2021
- Week of March 28, 2021
- Week of April 4, 2021
- Week of May 2, 2021
- Week of May 9, 2021

24. Despite Defendants alleged exempt classification, Plaintiff was not an exempt employee.

25. Following her title change in August of 2020, Plaintiff continued to perform the same job functions as she had before her title change, and which were the same job functions performed by other UPS part-time hourly employees.

26. Plaintiff also spent a significant amount of her time commuting between Stores 4140 and 7001, as directed by Defendant Cordova, for which she was not compensated all the time.

27. Defendant Cordova scheduled and coordinated Plaintiff's time to be split between both UPS stores and directed Plaintiff to share supplies and inventory between the stores including but not limited to tape, labels, printer paper, UPS shipping envelopes, boxes, shipping peanuts and ink cartridges.

28. Plaintiff would regularly commute between the UPS stores 4140 and 7001, trading shared inventory items without reimbursement for mileage or gas.

29. Plaintiff also used personal funds to purchase stamps for the UPS stores with the promise of reimbursement but was never reimbursed for such expenditures.

30. Defendant Cordova regularly held joint staff meetings for UPS Stores 4140 and 7001 together, where Defendant Cordova would review staff incentives, goals, promotions, focus areas, holiday hours and shipping delays.

31. Specifically, a mandatory staff meeting was held on October 28, 2020, for employees of both UPS Stores together.

32. Another employee meeting for staff of both stores was held together over Zoom on March 15, 2021.

33. Defendant Cordova promised to pay Plaintiff $4,400 per month from both UPS stores beginning April 1, 2021.

34. Text messages between Plaintiff and Defendant Cordova confirmed the mutual understanding of a pay increase from $4,000 to $4,400 monthly, but Defendants breached the promise to increase Plaintiff's salary.

35. Instead, after April 1, 2021, Plaintiff was paid $1,100 from Store 4140 bi-weekly and the same rate of $640 from Store 7001 bi-monthly.

36. When Plaintiff brought up to Defendant Cordova that she had not been given the raise as promised, Defendant Cordova reiterated that Plaintiff would be paid at the higher rate and made excuses, such as perhaps it was "Rick's fault" (an employee from UPS Store 7001).

37. Defendant Cordova promised Plaintiff that she personally would take care of Plaintiff's pay raise, but never did.

38. Plaintiff later learned that Rick from Store 7001 had never been informed of the promised raise.

39. Instead, Defendant Cordova knowingly and falsely represented to Plaintiff that Rick from Store 7001 had approved the raise and that the raise would be forthcoming in order to entice Plaintiff to remain employed, to Defendant Cordova's benefit and Plaintiff's detriment.

40. On May 21, 2022, Plaintiff had no choice but to resign due to Defendants' continued overscheduling, lack of adequate compensation, poor management, and Plaintiff's complete breakdown of trust in Defendants.

41. Based upon the above factors, LLC Defendants Stores 4140 and 7001 were not only associated but were joint employers under the FLSA.

42. As joint employers under the FLSA, Defendants should have aggregated Plaintiff's hours for each respective employer during the workweek in order to calculate overtime compensation that was owed to Plaintiff.

43. Even after her title change, Plaintiff was never given any managerial duties.

44. Plaintiff did not supervise any other full-time employees and she lacked authority to hire or fire any employee.

45. Plaintiff's misclassification as an exempt employee by Defendants was intentional and unlawful, in order to avoid payment of overtime compensation to Plaintiff.

46. To date, Plaintiff has not been paid any overtime compensation by Defendants.

## COUNT I

**VIOLATION OF FLSA FOR FAILURE TO PAY OVERTIME (29 U.S.C. 207(a))**

**(Against All Defendants)**

47. Plaintiff re-alleges and incorporates by reference all allegations in all preceding paragraphs.

48. Plaintiff is an employee for purposes of the FLSA and Defendants are employers, pursuant to 29 U.S.C. §203(d)-(e).

49. UPS Stores 4140 and 7001 are joint employers under the FLSA.

50. Joint employment exists as in this case, when two or more entities employ the same worker for separate hours within the same workweek.

51. Plaintiff was directed by Defendants to work, and did in fact work, more than 40 hours per week between UPS Stores 4140 and 7001 between September 2020 and May of 2021.

52. As joint employers, UPS Stores 4140 and 7001 should have aggregated Plaintiff's hours for each respective employer for purposes of overtime compensation.

53. During her employment, and even after her title change in August of 2020, Plaintiff was not exempt from the overtime provision of the FLSA.

54. Defendants failed to pay Plaintiff overtime for the weeks Plaintiff worked more than 40 hours in a week.

55. To date, Plaintiff has not been paid any overtime compensation by Defendants.

56. Defendants violated the FLSA by failing to pay Plaintiff at one and half times her regular rate of pay when she worked over 40 hours per week in a workweek.

57. Defendants knew– or acted with reckless disregard as to whether – their refusal to properly classify Plaintiff and to properly compensate Plaintiff over the course of her employment would violate federal and state law, and Defendants were aware of the FLSA overtime wage requirements during Plaintiff's employment. Accordingly, Defendants' conduct constitutes a willful violation of the FLSA.

58. Defendants are jointly liable for their FLSA violations.

59. Defendants also acted willfully and/or with reckless disregard in regularly failing to accurately record the time that they directed Plaintiff to work.

60. Defendants' willful and/or reckless conduct constitutes a willful violation of the FLSA and entitles Plaintiff to a lookback of three (3) years for purposes of compensatory damages.

61. Plaintiff is entitled to an award of compensatory damages for unpaid overtime and liquidated damages in an equal amount to be proven at trial, as well as attorney's fees and costs.

## COUNT II

## BAD FAITH FAILURE TO PAY WAGES UNDER A.R.S. § 23-355

**(Against All Defendants)**

62. Plaintiff re-alleges and incorporates by reference all allegations in all preceding paragraphs.

63. Defendants failed to pay wages due and owing to Plaintiff.

64. Defendants' failure to pay monies owed was intentional and done in bad faith.

65. Under A.R.S. §23-355(A), Plaintiff is entitled to an amount equal to treble the unpaid wages.

66. Plaintiff is also entitled to attorneys' fees pursuant to A.R.S. §23-364.

## COUNT III

## NEGLIGENT MISREPRESENTATION

**(Against Defendant Cordova)**

67. Plaintiff re-alleges and incorporates by reference all allegations in all preceding paragraphs.

68. During Plaintiff's employment, Defendant made false representations of past and/or existing material facts to Plaintiff when they promised to reimburse Plaintiff for

postage and promised Plaintiff a raise beginning April 1, 2021.

69. The false representations were material to the transaction(s) involving Plaintiff – in which Defendant had a pecuniary interest – and induced Plaintiff to act.

70. Defendant failed to exercise reasonable care or competence in making false representations to Plaintiff.

71. Plaintiff was induced to act – and did in fact act – based upon her justifiable reliance on Defendant's statements.

72. Plaintiff purchased postage stamps using her own funds for Defendant at Defendant's direction based upon Defendant's promise of reimbursement.

73. Plaintiff remained employed by Defendants because Defendant Cordova told Plaintiff she would be getting a raise as of April 1, 2021, that the raise had been approved by Rick, and that Defendant Cordova would personally take care of putting the raise into effect.

74. To date, Plaintiff has not been reimbursed for postage and has not received wages earned at the rate of pay promised by Defendants.

75. Plaintiff has been damaged by Defendant's negligent misrepresentations in an amount to be proven at trial.

76. Plaintiff incorporates by reference the allegations contained in the foregoing paragraphs.

## COUNT IV

## UNJUST ENRICHMENT

**(As Against All Defendants)**

77. Defendants were unjustly enriched by their failure to pay the amounts due and owing to Plaintiff.

78. As a consequence, Plaintiff was impoverished.

79. Neither Plaintiff's impoverishment nor Defendants' enrichment was justified.

80. Plaintiff has been damaged as a result of all Defendants' failure to pay the amounts due and owing to Plaintiff as set forth above.

81. In the absence of any relief pursuant to the other claims pled herein, Plaintiff will be left without a remedy for the aforementioned impoverishment and enrichment.

82. As a direct and proximate result of Defendants' unjust enrichment, Plaintiff has incurred and will continue to incur substantial costs, losses, expenses, and damages in an amount to be determined at trial.

83. As a direct and proximate result of Defendants' unjust enrichment, Plaintiff has incurred and will continue to incur, attorneys' fees and costs in an amount to be determined at trial.

## COUNT V

## BREACH OF THE IMPLIED DUTY OF GOOD FAITH AND FAIR DEALING

**(As Against All Defendants)**

84. Plaintiff re-alleges and incorporates by reference all allegations in all preceding paragraphs.

85. Arizona law supports the proposition that within every contract – written or oral – there is an implied covenant of good faith and fair dealing. *Nolan v. Starlight Pines Homeowners Ass'n*, 216 Ariz. 482, 489, ¶27 (App. 2007); *Maleki v. Desert Palms Prof'l Props., LLC*, 222 Ariz. 327, 333 ¶28 (App. 2009.).

86. In their employment relationship, Defendants owed Plaintiff the implied duty of good faith and fair dealing.

87. Defendants, by their actions and omissions, breached their duty to Plaintiff.

88. As a result of Defendants' acts and omissions, Plaintiff was harmed and suffered damages.

FERNANDEZ WATTS LAW, PLLC
1801 E. Camelback Rd. Ste. 102 #1057
Phoenix, Arizona 85016

89. Plaintiff is entitled to recover said damages from Defendants in an amount to be proven at trial.

## **DEMAND FOR JURY TRIAL**

Plaintiff requests a trial by jury on all issues so triable.

## **RELIEF REQUESTED**

**WHEREFORE**, Plaintiff prays judgment and relief against Defendants as follows:

A. Judgment in Plaintiff's favor and against Defendants on each of the above counts.

B. For the Court to award damages in the amounts of all unpaid overtime compensation due and owing to Plaintiff.

C. For the Court to award damages in the amounts of all business supplies for which Plaintiff paid out of pocket and was promised reimbursement.

D. For the Court to award compensatory damages in unpaid overtime and unpaid wages, including liquidated and punitive damages pursuant to 29 U.S.C. § 216(b), in amounts to be determined at trial.

E. For treble damages pursuant to A.R.S. §23-355(A).

F. For reasonable attorneys' fees and costs pursuant to 29 U.S.C. § 216(b), A.R.S. §12-341.01, A.R.S. §23-364, and all other causes of action set forth in this Complaint.

G. For the Court to award pre-judgment and post-judgment interest on any damages awarded.

H. Such other relief as this Court deems just and proper.

RESPECTFULLY SUBMITTED this 25 day of August 2022.

        FERNANDEZ WATTS LAW PLLC

        /s/Shayna Fernandez Watts
        1801 E. Camelback Rd. Ste. 102 #1057
        Phoenix, Arizona 85016

*Attorney for Plaintiff Sophia Rocha*

ORIGINAL e-filed with the Clerk of the Court
this 25th day of August 2022.

/s/Tiffany Fernandez